IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:09-cv-612-MEF |
| WEAVER AGGREGATE TRANSPORT, INC., | ) ) ) | (WO - PUBLISH) |
| Defendant / Third Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| BEACON INDUSTRIAL STAFFING, INC. | ) ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

American Home Assurance Company ("American Home" or "Plaintiff") brought this case against Weaver Aggregate Transport, Inc. ("Weaver" or "Third-Party Plaintiff") on June 30, 2009. (Doc. #1). Weaver filed a third-party complaint against Beacon Industrial Staffing, Inc. ("Beacon" or "Third-Party Defendant") on January 22, 2010. (Doc. #25). Beacon's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Doc. #36) is now under submission and ready for a ruling. For the reasons set forth in this Memorandum Opinion and Order, that motion is due to be GRANTED.

## II. JURISDICTION AND VENUE

Plaintiff and Third-Party Plaintiff both assert that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity). There is no dispute that venue is proper pursuant to 28 U.S.C. § 1391. Third-Party Defendant challenges personal jurisdiction with its pending motion.

## III. LEGAL STANDARD

Whether this Court has personal jurisdiction over a defendant is a question of law. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). The plaintiff has the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of personal jurisdiction over a nonresident defendant. *Id.* (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff establishes a prima facie case by presenting enough evidence to withstand a motion for directed verdict. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006).

When the defendant challenges personal jurisdiction by submitting affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *United Techs. Corp.*, 556 F.3d at 1274 (citing *Meier*, 288 F.3d at 1269). In other words, the plaintiff cannot respond merely by relying on the jurisdictional allegations in its complaint but must substantiate those allegations by affidavit or other component proof. *See Diamond*

*Crystal Brands*, 593 F.3d at 1257 (citing *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986)).

When the plaintiff's complaint and supporting evidence conflict with the defendant's evidence, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.* (citing *Meier*, 288 F.3d at 1269).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

American Home filed its complaint against Weaver on June 30, 2009. American Home alleges that it was an insurer authorized to provide workers' compensation and employer liability insurance in Alabama and Florida and had issued two workers' compensation and employer liability insurance policies to Weaver, providing coverage from December 28, 2004 to December 28, 2006. American Home further alleges that Weaver had an obligation under those policies to remit estimated premium payments to American Home, subject to a final audit by American Home to determine the total premium payment owed. Finally, American Home alleges that it performed this audit and, on or about July 20, 2007, billed Weaver for $404,013.00 in additional premiums owed, an amount Weaver refused to pay. American Home brings claims for breach of contract and unjust enrichment.

Weaver filed its third-party complaint, with leave of court, adding Beacon on January 22, 2010. Weaver pleads that it entered into a Client Service Agreement ("CSA") with Beacon on or about January 1, 2003. Under the CSA, Beacon would "lease" its employees to Weaver, provide workers' compensation insurance for those employees, and indemnify

3

Weaver for all costs including attorneys' fees in the case of a breach of the CSA. Weaver states that the CSA covered the policy period—December 2004 to December 2006—alleged by American Home in its complaint. Weaver alleges that Beacon never met its obligation to provider workers' compensation insurance while misrepresenting that it had done so and brings claims for negligence or wantonness, breach of contract, and fraud, suppression, and deceit. Weaver also brings a claim against Beacon for indemnity for any liability to American Home. In short, Weaver claims that the premiums American Home alleges are owed to it are owed by Beacon and not Weaver. Though Weaver makes no explicit allegations regarding personal jurisdiction in its third-party complaint, it does state that Beacon applied for a policy of insurance through its agent, Southern Brokerage Services, Inc. ("Southern Brokerage"), in Montgomery, Alabama. Weaver attached to its complaint an invoice from Beacon addressed to Weaver at 1901 Findley Blvd., Rm. 2, Birmingham, AL 35234 (the "Birmingham address"). On the invoice, Beacon listed its address in Shelby Township, Michigan.

Instead of answering, Beacon filed its motion to dismiss for lack of personal jurisdiction on February 26, 2010. Beacon attached the affidavit of Salvatore Manzo ("Manzo") as an exhibit to its motion. Manzo gave the following facts in his affidavit: He works as Director of Operations for Beacon at its offices in Shelby Township, Michigan. From December 2004 through April 2006, Weaver retained Beacon to lease employees to Weaver for Weaver's operations in Florida. No employee of Beacon had any contact with

Alabama during this period. Beacon conducted no business in Alabama during this period. Beacon has never maintained any offices or employees in Alabama. Beacon does not acquire "substantial revenue" from Alabama. Beacon has never created or signed any contracts in Alabama. Beacon has never been a party to any lawsuit in any court in Alabama other than this pending suit. Beacon has never taken any action directed towards Alabama. Finally, and in contrast to Weaver's pleaded facts in its third-party complaint, Beacon purchased all insurance policies pursuant to the CSA through its broker Acordia/Wells Fargo ("Acordia") in Southfield, Michigan and has never had any dealings or contact with Southern Brokerage.[1]

In responding to the motion to dismiss, Weaver added further details to its pleadings that it claims give rise to personal jurisdiction over Beacon. Weaver concedes that Beacon had Acordia apply on its behalf to Southern Brokerage for workers' compensation insurance. However, Weaver attached several documents, indicating the following: Acordia procured workers' compensation insurance in Alabama and Florida, effective December 28, 2004 and January 17, 2005, respectively. Patrick Green ("Green") of Acordia applied to Southern Brokerage on behalf of Beacon. An undated advertisement for Beacon listed Green as the Director of Marketing for Beacon. Several documents created by Beacon and Acordia, including weekly invoices sent from Beacon to Weaver from July 2005 to April 2006, gave the Birmingham address for Weaver. Furthermore, Green stated in an email to another

---

[1] The affidavit also includes the unclear statement, "Beacon does maintain any bank accounts in the State of Alabama."

5

Acordia employee that Weaver had "moved their offices to Alabama and we are working in Alabama." Finally, Weaver submitted the affidavit of Russell Weaver, its president, which stated as follows: Weaver is a Florida corporation and maintains its corporate offices at 2020 Highway 470, Sumterville, Florida 33585 (the "Sumterville, FL address"). Weaver has never maintained any office in Alabama, including the Birmingham address, and had no employees in Alabama from December 28, 2004 to December 28, 2006. The CSA was in effect from January 1, 2003 to April 18, 2006.

In its reply, Beacon submitted Manzo's second affidavit, stating the following facts: Beacon never represented to any entity that it leased employees to Weaver for work in Alabama. All insurance policies purchased pursuant to the CSA were purchased through Green, a broker for Acordia. Green was not an employee of Beacon during the relevant time period, and Acordia is a completely separate entity from Beacon. Beacon and Acordia have "never shared employees, offices, directors, or any other commonality so as to have any association." Beacon "is not nor has it ever been an alter ego of Acordia." As for Green, he has never been an employee of Beacon and was only "loosely affiliated" as an independent contractor salesmen with Beacon in January of 2009. Green "never made any sales on behalf of Beacon, was never paid by Beacon, and Beacon never received any income as a result of work performed by Green." Green's only association with Beacon prior to January 2009 was as an insurance broker employed with Acordia. Beacon never performed any business or operations at the Birmingham address and has never represented or authorized anyone to

6

represent to anyone that Weaver maintained a location at that address. Any reference to the Birmingham address on invoices sent to Beacon was a clerical error. Beacon sent all documents to Weaver at the Sumterville, FL address. Any invoice noting the Birmingham address would have been a mistake obvious to Weaver upon receipt in Florida. Beacon never dealt with anyone at the Birmingham address.

## V. DISCUSSION

This Court, when sitting in diversity, uses a two-step inquiry to determine whether personal jurisdiction exists. *Diamond Crystal Brands*, 593 F.3d at 1257. The exercise of jurisdiction (1) must be appropriate under Alabama's long-arm statute, and (2) must not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 1257–58. However, the Court need not apply Alabama's long-arm statute, as Alabama's state courts have interpreted it to confer personal jurisdiction to the extent allowed by federal due process law. *Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1154 (M.D. Ala. 2007); *Vista Land & Equip., L.L.C. v. Computer Programs & Sys., Inc.*, 953 So. 2d 1170, 1174 (Ala. 2006); *see also* Ala. R. Civ. P. 4.2(b). Therefore, the Court needs only to determine whether the exercise of personal jurisdiction over Beacon comports with due process. *Aeropower, Ltd.*, 511 F. Supp. 2d at 1154; *see also Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) ("In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible.").

States may exercise jurisdiction only over defendants who have sufficient minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Diamond Crystal Brands*, 593 F.3d at 1267. These are two separate questions. *See, e.g.*, *id.* at 1267–74.

The defendant's contacts must satisfy three criteria to create specific jurisdiction:[2] the contacts must be related to or have given rise to the plaintiff's cause of action, the defendant must have purposefully availed himself of the privilege of conducting activities within the forum state with those contacts, and the contacts must be to an extent that the defendant should reasonably anticipated being haled into court in the forum state. *Sloss Indus. Corp.*, 488 F.3d at 925; *see Diamond Crystal Brands*, 593 F.3d at 1267 ("[T]he defendant must have purposefully availed itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." (inner quotations omitted)).

Beacon argues that it has no connections to Alabama, it did not procure insurance from an Alabama company, and it did not procure insurance coverage for business to be conducted in Alabama. Beacon states that all business undertaken between Beacon and Weaver were performed "in or about the State of Florida."

Weaver argues that Beacon had sufficient minimum contacts with Alabama to be

---

[2] By contrast, general jurisdiction—which Third-Party Plaintiff does not contend applies in this case—only exists where the defendant has continuous, systematic contacts with the forum. *Sloss Indus. Corp.*, 488 F.3d at 925 n.3.

subject to personal jurisdiction here. Specifically, Weaver argues that Beacon had contacts with Alabama when it sought workers' compensation insurance through Acordia to Southern Brokerage, an Alabama company, for workers' compensation coverage in Alabama and Florida. In reply, Beacon reasserts its argument that it has no contacts with Alabama.

Weaver does not allege in its third-party complaint that Beacon had any contacts to Alabama other than Acordia applying for insurance in Alabama. Furthermore, Beacon submitted affidavit evidence that it had no other contacts with Alabama, which Weaver did not dispute with any evidence. Therefore, the Court first addresses the argument that a Michigan company applying for insurance through a Michigan agent to an insurer in Alabama constitutes sufficient contacts to create personal jurisdiction. Weaver does not cite any law for this proposition.

The Court finds that Beacon's "contacts" with Alabama, as described by Weaver, are not sufficient to create personal jurisdiction in Alabama. Minimum contacts analysis is not amenable to any checklist, and the Court must view contacts both quantitatively and qualitatively. *Sloss Indus. Corp.*, 488 F.3d at 925. Quantitatively, Beacon's "contacts" with Alabama were minor and few in number. Weaver can present evidence only that "Acordia corresponded with [Southern Brokerage] in Alabama no less than three times in writing," adding that Acordia also presumably contacted Southern Brokerage "numerous" times by telephone.

Qualitatively, and more notably in this case, Weaver has produced no evidence that

9

Beacon itself had any contacts with Alabama or intended that Acordia have any contacts with Alabama. Beacon sought workers' compensation insurance from Acordia, a Michigan company. Acordia then contacted Southern Brokerage in Alabama. Manzo states in his affidavit that "Beacon has never engaged in any actions directed toward the State of Alabama." Weaver has submitted no evidence that Beacon intended that Acordia acquire insurance from an Alabama company, and Beacon submits evidence directly contradicting that presumption. There is no evidence that Beacon purposely availed itself of the privilege of conducting activities within Alabama by going to a Michigan company for workers' compensation insurance to cover employees leased to Weaver, a Florida company. *See, e.g.*, *Sloss Indus. Corp.*, 488 F.3d at 925. As a result, there is no evidence that Beacon should reasonably anticipate being haled into court in Alabama by seeking insurance from a Michigan company. *See id.*

    Weaver in part attempts to respond to Beacon's absence of contact with Alabama by suggesting that Acordia is simply an alter ego of Beacon. Were that the case, Beacon would have contacts with Alabama by seeking insurance, through its alter ego, from Southern Brokerage. As evidence, Weaver submits documents listing Patrick Green as both an employee of Acordia and as "Director of Marketing" for Beacon. Weaver argues that a reasonable inference from this evidence is that Beacon and Acordia had common employees and management to the extent that Acordia was merely an alter ego of Beacon. Beacon responded with Manzo's second affidavit, where he stated that Green has never been an

10

employee of Beacon—though he was an independent contractor with Beacon in January 2009—that Beacon has never been an alter ego of Acordia, and that Acordia's only affiliation with Beacon has been as its insurance broker. The Court must construe all reasonable inferences in favor of Weaver when the evidence submitted by Weaver and Beacon conflict. *Diamond Crystal Brands*, 593 F.3d at 1257. However, Manzo's second affidavit clarifies, rather than conflicts with, the evidence submitted by Weaver. Weaver has submitted no evidence that conflicts with Beacon's evidence that it is not an alter ego of Acordia. Therefore, the Court finds on the evidence before it that Acordia is a separate entity, and Beacon made no contacts with Alabama sufficient to give rise to personal jurisdiction.

Weaver makes a final argument that personal jurisdiction is proper through application of the "effects test." *See Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (finding that California courts could exercise personal jurisdiction over the writer and editor, living and working in Florida, of an allegedly libelous story about a California resident published in a newspaper with significant California circulation). Weaver argues that Beacon fraudulently claimed that Weaver had operations at the Alabama address, thereby acquiring insurance for nonexistent Alabama employees and leading American Home to sue Weaver in Alabama for premiums owed. Therefore, Weaver states that the "effect" of the fraud was felt in Alabama, giving rise to personal jurisdiction over Beacon in Alabama.

Beacon argues in reply that Weaver has produced no evidence sufficient to form the

inference that Beacon fraudulently represented that Weaver had an office at the Birmingham address. Additionally, Beacon states that, even if Weaver could show that Beacon gave Weaver's address as the Birmingham address, such an action should be considered a mistake. Beacon further argues that, because Weaver claims it paid the invoices in question, Weaver must have received the invoices at its office in Florida despite the inclusion of the Birmingham address on those invoices. Finally, Beacon argues that any fraud would have been directed at Florida, not Alabama, since Weaver is a Florida company.

Weaver's argument is a misstatement of the effects test. In *Calder*, the Supreme Court found that defendants were subject to the jurisdiction of courts in California because they wrote and edited an article that foreseeably affected the plaintiff in California by libeling her in the community in which she lived and worked. *See id.* at 788–89 ("The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."); *id.* at 789 ("[T]heir intentional, and allegedly tortious, actions were expressly aimed at California."). Assuming the rationale in *Calder* is applicable in this case, the "effect" of Beacon's alleged fraud would occur in Florida, as that is where Weaver, the allegedly defrauded party, is located. Weaver attempts to stretch the test by saying that Beacon is subject to the jurisdiction of courts in Alabama because its alleged fraud led a third party to bring a lawsuit against Weaver in Alabama. The effects test applies to the effect of the action giving rise to the alleged liability of the actor. It would be a generous extension of

*Calder* to say it applies to the indirect allegedly resulting harm of the location of a third party's lawsuit. Therefore, Weaver must prove personal jurisdiction through standard minimum contacts analysis, which, as stated above, it has failed to do.

Though Weaver cannot demonstrate that Beacon had minimum contacts sufficient to create personal jurisdiction, other considerations outlined by the Supreme Court "may in exceptional cases serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These are the considerations typically used to determine if the assertion of personal jurisdiction comports with fair play and substantial justice and include: the burden on Beacon, Alabama's interest in adjudicating the dispute, Weaver's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. *See Burger King*, 471 U.S. at 477.

Beacon will certainly be burdened by defending a lawsuit in Alabama. Considering that Weaver is based in Florida, American Home is based in New York, and Beacon is based in Michigan, Alabama does not have a particularly strong interest in adjudicating the dispute here. Weaver certainly has an interest in keeping Beacon attached to this lawsuit, as it has not disputed its amenability to the jurisdiction of this Court. As a result, the controversy might be most efficiently resolved by exercising jurisdiction over Beacon. The Court

concludes that no fundamental social policy would be significantly furthered by subjecting Beacon to the jurisdiction of this Court. It is worth noting that the Eleventh Circuit did not consider *Madara* to be the rare "exceptional case[]" where personal jurisdiction should be exercised in the absence of sufficient minimum contacts, even though the plaintiff may have been barred by the statute of limitations from bringing the suit in any other forum. *Madara*, 916 F.2d at 1519. With that in mind, the Court finds that these considerations are insufficient to override the finding that Beacon does not have sufficient minimum contacts with Alabama.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ordered that Third-Party Defendant's motion to dismiss for lack of personal jurisdiction (Doc. #36) is GRANTED. The Clerk is DIRECTED to dismiss Beacon Industrial Staffing, Inc. from this action.

DONE this the 28th day of June, 2010.

/s/ Mark E. Fuller<br>
CHIEF UNITED STATES DISTRICT JUDGE